[Cite as *B.S. v. M.M.*, 2021-Ohio-176.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| B.S. | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellant | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 2020 CA 00111 |
| | : | |
| M.M. NKA L.G. | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of Common Pleas, Domestic Relations Division, Case No. 2011DR00330

JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:      January 25, 2021

APPEARANCES:

For Plaintiff-Appellant:                 For Defendant-Appellee:

JEFFREY JAKMIDES                    TODD A. MAZZOLA
325 East Main Street                   LISA CAREY DEAN
Alliance, OH 44601                    50 South Main Street, 10th Floor
                                         Akron, OH 44308

*Delaney, J.*

{¶1}   Plaintiff-Appellant, B.S. appeals the July 14, 2020 judgment entry of the Stark County Court of Common Pleas, Domestic Relations Division.

## FACTS AND PROCEDURAL HISTORY

### Divorce and Custody Determination

{¶2}   Plaintiff-Appellant, B.S. ("Father") and Defendant-Appellee, M.M. nka L.G. ("Mother") are the parents of two children, M.F.S. (born on January 15, 2003) and M.H.S. (born on October 7, 2006). The parties were married on August 30, 2003. On March 17, 2011, Father filed a complaint for divorce against Mother. Pursuant to a Magistrate's Order filed on April 6, 2011, Father was designated temporary residential parent of the children and Mother was granted visitation.

{¶3}   A trial was held on August 31, 2011 on the issue of custody of the children. Neither party submitted a proposed plan for shared parenting. At the time of the trial, M.F.S. was eight years old and M.H.S. was four years old. The Guardian Ad Litem testified at the trial that she recommended that Father be designated the residential parent for school purposes and that Mother have visitation.

{¶4}   Pursuant to a Final Entry Decree of Divorce filed on September 26, 2011, the trial court designated Father as the residential parent and legal custodian of the children and granted Mother parenting time. Mother's parenting time with the children was Tuesdays and Thursdays from after school until 7:00 p.m., every other weekend and alternate weeks during the summer school recess. In addition, the trial court ordered parenting time during holidays and two weeks of vacation during summer recess. Mother was ordered to pay child support.

{¶5}   Mother appealed the Final Entry Decree of Divorce to this Court in [*S. v. S*], 5th Dist. Stark No. 2011CA00240, 2012-Ohio-4148. She argued the trial court abused its discretion when it designated Father as the residential parent and legal custodian of the children. On September 10, 2012, we issued our decision affirming the Final Entry Decree of Divorce.

**Request for Reallocation of Parental Rights and Responsibilities**

{¶6}   Father and the children resided in Alliance, Ohio, located in Stark County. They attended school within the Alliance City School District. Father and the children lived in a rental duplex with paternal grandparents.

{¶7}   Mother remarried in 2015 and had a child. She resided in a rental home in Bath, Ohio, located in Summit County. Her residence was within the Revere Local School District. She was self-employed as a photographer and her husband was the co-owner of a local insurance agency in Fairlawn, Ohio.

{¶8}   On August 14, 2019, Mother filed a motion for reallocation of parental rights and responsibilities regarding M.H.S., who was 13 years old. At the time of the divorce decree, the M.H.S. was four years old. In Mother's affidavit attached to her motion to reallocate parental rights and responsibilities, she averred that the child "has consistently expressed her desire to live with me and attend school from my residence since last fall." She referred to an incident where M.H.S. refused to return to Father's home until she was removed by law enforcement, an incident of domestic violence where Father grabbed M.H.S. by her hair, and that M.H.S. had made threats of suicide. Mother contended Father had not addressed the issues or concerns for M.H.S.'s mental health. Mother stated it

was in the best interest of M.H.S. for Mother to be named the residential parent and legal custodian so Mother could address the child's medical and mental health needs.

{¶9}   The trial court appointed a Guardian ad Litem on September 11, 2019. The GAL filed his 24-page report with the trial court on December 31, 2019. He recommended the parents enter into a shared parenting plan where Mother would be the residential parent of M.H.S. If a shared parenting plan was not an option, the GAL recommended that Mother be named as the sole legal custodian of M.H.S.

{¶10} On October 2, 2019, Father filed a motion to show cause why Mother should not be held in contempt for her failure to comply with the Final Decree of Divorce. Mother was ordered to pay child support in the amount of $297.73 per month. Mother was $18,671.59 in arrears to the Child Support Enforcement Agency and had not made over one-half of the payments due. Father also argued Mother should be held in contempt for her failure to return the children to Father after Mother's weekend visitation on August 11, 2019.

{¶11} A hearing was held on the motion for reallocation of parental rights on January 7, 2020. There is no transcript of the hearing in the record for this appeal. On January 16, 2020, the trial court filed its findings of facts, conclusions of law, and decision. The trial court denied the motion for reallocation of parental rights, finding no change in circumstances. The trial court noted in is judgment entry that the testimony at the hearing was consistent that M.H.S. expressed a desire to live with Mother, but neither party requested the trial court to conduct an in-camera interview with M.H.S. (Finding of Fact No. 11). The trial court concluded there was sufficient evidence to cause the court to believe that the child "would prefer to live with her mother and attend school in Revere,

however, the child's wishes is a best interest factor that cannot be analyzed until a change of circumstances is established." (Conclusion of Law No. 2). The trial court determined there was no change in the circumstances of the child or the child's residential parent and therefore it was precluded from considering the motion and the factors surrounding the child's best interest. (Decision No. 1).

{¶12} Mother appealed the trial court's January 16, 2020 judgment entry to this Court in [*S. v. M.*], 5th Dist. Stark No. 2020 CA 00036, 2020-Ohio-3512. She argued the trial court abused its discretion in declining to consider the child's wishes given the child's advanced age and the intervening events in the child's life in determining no change in circumstances. *Id.* at ¶ 8. Based upon our analysis of R.C. 3109.04(E)(1)(a) and our prior decisions, we agreed with Mother that the trial court abused its discretion when it failed to consider the child's wishes as a change in circumstances. We acknowledged that a child's desire to live with a particular parent, without more, does not constitute a change of circumstance. [*S. v. M.*] at ¶ 14 citing *Davis v. Davis*, 5th Dist. Tuscarawas No. 2016 AP 05 0031, 2016-Ohio-7205, ¶ 38. The analysis requires the trial court to determine whether the child's age, coupled with the desire to live with a different parent, constitutes a change in circumstances. *Id.* In *Boone v. Kaser*, 5th Dist. Tuscarawas No. 2001AP050050, 2001 WL 1011453, *2 (Aug. 28, 2001), we held "the passage of time during a significant developmental portion of a child's life, combined with other pertinent factors, such as the child's expressed desires to reside with mother, supports the trial court's finding of a change of circumstances, requiring further inquiry by a trial court." [*S. v. M.*] at ¶ 16. With this guidance, we reversed the judgment entry and remanded the

matter to the trial court to consider the wishes of M.H.S. to determine whether there had been a change of circumstances. *Id.* at ¶¶ 17-18.

## Consideration of the Child's Wishes

{¶13} In accordance with our June 26, 2020 decision remanding the matter to the trial court for consideration of the child's wishes, the trial court considered the evidence presented at the January 7, 2020 hearing and issued its findings of fact, conclusions of law, and decision on July 14, 2020. After reconsidering the findings of fact pursuant to our ruling, the trial court concluded there had been a change of circumstances:

As directed by the Court of Appeals, the court finds that a change of circumstance has occurred in the mother's situation with her remarriage, birth of her son and her career as a photographer.

Given the child's wishes and age, the court finds that a substantial change of circumstances exists. The evidence does indicate that [M.H.S.]'s grades have slipped. The Guardian ad Litem reported that her interim report card came back with two F's, three C's and two A's. However, since [M.H.S.] has been placed on medication for ADHD, her algebra grade has gone up from an F to a B-. The Guardian further wrote that [M.H.S.]'s counselor found her to be a very intelligent young lady with the ability to think outside the box, and that she follows the rules at the school and complies with adult direction.

Child Protective Services did not substantiate any allegations of domestic violence or abuse nor did the Guardian.

There is sufficient evidence to cause the court to believe that [M.H.S.] would prefer to live with her mother and attend school in Revere. (Conclusions of Law No. 2).

{¶14} The trial court then considered the best intertest of [M.H.S.] and found a modification would be in her best interest. (Conclusions of Law Nos. 3-4). The trial court concluded that while shared parenting would be a preferred option, it was not requested by the parents. It named Mother as the sole legal custodian of M.H.S. with her parenting time commencing the beginning of the 2020 school year. (Conclusions of Law No. 4).

{¶15} Additionally, the trial court found Mother in contempt for her nonpayment of support as ordered. The trial court further found Mother in contempt for her deviation from the weekend visitation schedule. Based upon Mother's contempt of the trial court's orders in two instances, the trial court sentenced Mother to 15 days in the Stark County Jail. The jail sentence was suspended on condition that Mother continue to make monthly payments towards her arrearages on child support and no further violation of the parenting time order. She could purge the contempt by paying the arrearages within 30 days.

{¶16} The parties submitted proposed child support worksheets and supporting evidence on July 14, 2020. On August 18, 2020, the trial court ordered Father to pay child support in the amount of $247.99 per month.

**Appeal**

{¶17} On August 10, 2020, Father filed a notice of appeal of the July 14, 2020 judgment entry. In his notice of appeal, he requested the Stark County Clerk of Courts file

the "docket and journal entries only, no transcript of the proceedings." It is from this record we consider Father's appeal.

## ASSIGNMENT OF ERROR

{¶18} Father raises one Assignment of Error:

{¶19} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DETERMINED MOTHER'S REQUEST FOR MODIFICATION WAS IN [M.H.S.]'S BEST INTEREST AND THAT ANY HARM POTENTIALLY CAUSED BY MOTHER'S REQUESTED MODIFICATION IS OUTWEIGHED BY ITS ADVANTAGES."

## ANALYSIS

{¶20} Father contends in his sole Assignment of Error that the trial court abused its discretion when it granted a reallocation of parental rights to Mother. We disagree.

{¶21} A trial court reviews a motion to reallocate parental rights and responsibilities under R.C. 3109.04(E)(1)(a) which states as follows:

(E)(1)(a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

Therefore, in determining whether to make a modification, a trial court must consider (1) whether a change in circumstances has occurred, (2) whether a modification is in the child's best interest, and (3) whether the benefits that result from the change of environment outweigh any harm.

{¶22} On appeal, our standard of review in assessing the disposition of child custody matters is that of abuse of discretion. *Salameh v. Salameh*, 5th Dist. Delaware No. 19 CAF 01 0008, 2019-Ohio-5390, ¶ 108 citing *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). Furthermore, as an appellate court reviewing evidence in custody matters, we do not function as fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment. *Dinger v. Dinger*, 5th

Dist. Stark No. 2001CA00039, 2001-Ohio-1386. Because custody issues are some of the most difficult and agonizing decisions a trial judge must make, he or she must have wide latitude in considering all the evidence. *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997).

{¶23} The trial court is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Deferential review in a child custody determination is especially crucial "where there may be much evidence by the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997). We are mindful that the knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record, and the reviewing court should be guided by the presumption that the trial court's findings were correct. *See, Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988).

{¶24} Before we examine Father's arguments, we note that a transcript of the January 7, 2020 hearing on the motion for reallocation of parental rights was not submitted with this appeal. Pursuant to App.R. 9(B)(1), "[i]t is the obligation of the appellant to ensure that the proceedings the appellant considers necessary for inclusion in the record, however those proceedings were recorded, are transcribed in a form that meets the specifications of App.R. 9(B)(6)." When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to

presume the validity of the lower court's proceedings, and affirm. *Goble v. Grosswiler*, 5th Dist. Richland No. 2018 CA 0102, 2019-Ohio-4443, 2019 WL 5595795, ¶ 35 citing *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 400 N.E.2d 384 (1980). Pursuant to that standard, we consider Father's arguments.

**Change of Circumstances**

{¶25} As stated above, the trial court is required to engage in a three-pronged analysis to determine whether to make a modification to the allocation of parental rights. The trial court must first determine whether there has been a change of circumstance.

{¶26} R.C. 3109.04 does not define the concept of "change in circumstances." *Oyler v. Lancaster*, 5th Dist. Stark No. 2019CA00130, 2020-Ohio-758, ¶ 24. However, Ohio courts have held the phrase is intended to denote "an event, occurrence, or situation which has a material and adverse effect upon a child." *Wyss v. Wyss*, 3 Ohio App.3d 412, 445 N.E.2d 1153 (10th Dist.1982). Additionally, the change of circumstances must be "one of substance, not a slight or inconsequential change." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997-Ohio-260, 674 N.E.2d 1159.

{¶27} "In determining whether a 'change' has occurred, a trial judge must have wide latitude in considering all the evidence, and the court's decision must not be reversed absent an abuse of discretion." *In re A.P.*, 2nd Dist. Montgomery No. 28023, 2019-Ohio-139, ¶ 23; *Davis, supra*. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶28} In this case, the trial court determined there had been a substantial change of circumstances based on the child's wishes to live with her Mother and the child's age. The trial court referred to the drop in the child's grades, but other evidence indicated that M.H.S. was very intelligent and had the ability to think outside of the box. A review of Father's appeal shows that he does not assign as error the trial court's conclusion there had been a change of circumstances based on the child's wishes and age. Father's appeal concentrates on the second prong of the analysis, whether a modification is in the child's best interests. We recognize however, the best interest analysis does impact the question of whether there has been an event, occurrence, or situation that has a material and adverse effect upon a child. *Davis v. Flickinger*, 77 Ohio St.3d 415, 421, 1997-Ohio-260, 674 N.E.2d 1159.

**Best Interests**

{¶29} If a change of circumstances is established, the trial court must weigh the best interest of the child before modifying parental rights. R.C. 3109.04(F)(1), which sets forth a nonexhaustive list of the factors a trial court must consider in determining the best interest of the child, provides:

(F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually

oriented offense involving a victim who at the time of the commission of the

offense was a member of the family or household that is the subject of the

current proceeding; whether either parent or any member of the household

of either parent previously has been convicted of or pleaded guilty to any

offense involving a victim who at the time of the commission of the offense

was a member of the family or household that is the subject of the current

proceeding and caused physical harm to the victim in the commission of the

offense; and whether there is reason to believe that either parent has acted

in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared

parenting decree has continuously and willfully denied the other parent's

right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to

establish a residence, outside this state.

The best interest determination focuses on the child, not the parent. *In re C.T.*, 5th Dist. Licking No. 2020 CA 00014, 2020-Ohio-4965, 2020 WL 6147171, ¶ 57 citing *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, at ¶ 59.

### The Trial Court's Consideration of the Factors

{¶30} Father argues that out of the ten factors in R.C. 3109.04(F)(1), the trial court's consideration of three of the factors require reversal of the judgment based on abuse of discretion. He states the trial court's findings as to the remaining factors did not weigh in favor of Mother or Father. We first review the trial court's findings in the July 14, 2020 judgment entry as to the best interest factors not argued by Father.

{¶31} Both parents wished to be M.H.S.'s residential parent. The trial court found that M.H.S. interacted and interrelated well with both Mother and Father. M.H.S. was described as a smart and creative child, whose personality was more reflective of Mother's. M.H.S. struggled opening up and talking with Father about her feelings and interests. At the time of the divorce, Mother was not involved in the children's school. Since the divorce, Mother was more involved in the children's education, especially with M.H.S. M.H.S.'s grades had dropped and the child was diagnosed with ADHD. M.H.S. was placed on medication for her ADHD and her grades improved. Mother assumed the responsibility of addressing medical, dental, and psychological issues for the children both for treatment and prevention. The trial court found Father was appropriate in dealing with M.H.S.'s schooling and mental health issues. See R.C. 3109.04(F)(1)(a), (c), (d), and (e).

### R.C. 3109.04(F)(1)(b)

{¶32} R.C. 3109.04(F)(1)(b) states that if the trial court has conducted an in camera interview with the child regarding her wishes and concerns as to the allocation of parental rights, the trial court shall consider the wishes and concerns of the child as expressed to the court. Father contends because the trial court did not conduct an in camera interview of M.H.S., the trial court cannot consider the wishes and concerns of the child as weighing in favor of Mother.

{¶33} R.C. 3109.04 provides a child who is the subject of custody litigation with ample opportunity to be heard on the relevant issues. In addition to the in camera interview, Ohio trial courts have several potential avenues to receive information about the child's wishes and concerns. *In re A.G.,* 139 Ohio St.3d 572, 2014-Ohio-2597, 13

N.E.3d 1146, 2014 WL 2766200, ¶ 71 (2014) citing Saywitz, Camparo & Romanoff, *Interviewing Children in Custody Cases: Implications of Research and Policy for Practice*, 28 Behav.Sci.Law 542 (2010) (explaining that typically courts may receive information about a child's wishes and concerns directly from the child or by information filtered through a lawyer, a psychologist, or a GAL). We held in *DiDonato v. DiDonato*, 2016-Ohio-1511, 63 N.E.3d 660 (5th Dist.) that while the trial court did not interview the children when determining a reallocation of parental rights, there was competent and credible evidence to support the trial court's determination as to the wishes and concerns of the children because the GAL interviewed the children and provided the trial court with a recommendation and report. *Id.* at ¶ 67.

{¶34} In this case, the trial court heard testimony from the GAL about the child's wishes and concerns. The GAL testified that M.H.S. wished to reside primarily with Mother and the GAL's recommendation mirrored the child's wishes. (Finding of Fact, No. 8). The trial court stated in its judgment that while it did not conduct an in camera interview because neither Father nor Mother requested an interview, "the evidence indicates that [M.H.S.] does wish to live with her mother primarily, change schools and her wishes mirror the recommendations of the Guardian Ad-Litem." (Findings of Fact, No. 15). The trial court noted that Mother alleged that M.H.S. consistently expressed a desire to live with her and attend school in the Revere Local School District and testimony in that regard was consistent. (Findings of Fact, No. 11).

{¶35} R.C. 3109.04(F)(1)(b) is merely one factor, in a list of ten factors, that a trial court must consider in determining the best interests of the child. Clearly, it is not the controlling factor and should not be the only factor upon which a trial court bases its

decision. *See Nusbaumer v. Cherry*, 5th Dist. Stark No. 1998CA00243, 1999 WL 254489, *3 (Apr. 26, 1999). Without the transcript of the hearing, we cannot say the trial court's findings and resulting conclusion as to the wishes and concerns of the child were not adequately conveyed by the GAL or inconsistent with the testimony.

### R.C. 3109.04(F)(1)(f)

{¶36} Father next contends the trial court erred when it found it was in the best interests of the child to be placed with Mother after considering R.C. 3109.04(F)(1)(f). R.C. 3109.04(F)(1)(f) states the court shall consider "[t]he parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights." Father contends there was evidence in the record that Mother would not cooperate with parenting time rights or visitation.

{¶37} In its findings of fact, the trial court described an incident on August 11, 2019 that took place between Mother and Father. The children were completing parenting time with Mother when Father arrived to take the children home. Before conveying the children, Mother asked Father to discuss a modification of parental rights and responsibilities. Father indicated he did not want to discuss the issue at that time, but Mother refused to permit the children to go with Father until he agreed to talk. Father called the Bath Township police. M.F.S. willingly went with Father but M.H.S. indicated she did not want to go with Father. The police refused to intervene because it was a civil matter and M.H.S. stayed with Mother that night. The next day, Father spoke with the Bath Township police and presented the Final Decree of Divorce and the custody orders. The police accompanied Father to Mother's house and facilitated M.H.S.'s return to Father's care. (Findings of Fact, No. 11).

{¶38} Based on that incident, the trial court found Mother in contempt for her deviation from the weekend visitation schedule. As to R.C. 3109.04(F)(1)(f), the trial court found the incident concerning and perhaps indicative of future problems. (Findings of Fact, No. 19).

{¶39} The trial court found there was evidence presented at the hearing that showed the deviation from the weekend visitation schedule was an outlier for the parent's cooperation as to parenting time. (Findings of Fact, No. 19). The trial court noted that subsequent to the divorce in 2011, the parties began altering the parent time schedule to fit their circumstances, particularly the distance between them. (Findings of Fact, No. 10). The parents were able to modify the schedule without court assistance by coming to their own agreements. (*Id.*) The GAL testified that the "police incident was so overkill for these parents." (Findings of Fact, No. 11). The GAL did not believe the incident represented the ability of Mother and Father to cooperate on a daily basis and did not represent the normal interaction between the parents. (Findings of Fact. Nos. 11, 19.) He found the parents were appropriate for working together under a shared parenting plan. (Findings of Fact, No. 13).

### R.C. 3109.04(F)(1)(g)

{¶40} Father argues the trial court's consideration of R.C. 3109.04(F)(1)(g) should have weighed allocation of parental rights in favor of Father. R.C. 3109.04(F)(1)(g) considers whether "either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor." Mother was in arrears on her child support obligation in the amount of $18,671.59. (Findings of Fact Nos. 12, 20).

{¶41} The trial court found Mother in contempt for her failure to pay child support and sentenced her to 15 days in the Stark County Jail. The jail sentence was suspended on condition that Mother continue to make monthly payments towards her arrearages on child support and she could purge the contempt by paying the arrearages within 30 days. After the trial court named Mother as the legal custodian of M.H.S., Father was ordered to pay child support.

**No Abuse of Discretion**

{¶42} No one factor of R.C. 3109.04(F)(1) is dispositive of the child's best interest, and the court has discretion to weigh the factors "as it sees fit." *Leach v. Leach*, 12th Dist. Butler No. CA2019-06-092, 2020-Ohio-1181, 2020 WL 1518597, ¶ 9 citing *Carr v. Carr*, 12th Dist. Warren Nos. CA2015-02-015 and CA2015-03-020, 2016-Ohio-6986, ¶ 22. In this case, after considering all of the factors to determine the best interest of the child and the evidence as a whole, the trial court found that shared parenting would be the preferred option. The three factors argued by Father as weighing against Mother, when considered with the remaining factors, were not dispositive to the trial court of the best interest of the child. The trial court's finding that shared parenting would be the preferred option demonstrates the factors weighed almost equally to Mother and Father. Unfortunately, Mother and Father did not propose shared parenting.

{¶43} The trial court was tasked to determine if there had been a change of circumstances, whether a modification is in the child's best interest, and whether the benefits that result from the change of environment outweigh any harm. As part of that analysis as directed by this Court, the trial court considered the wishes and concerns of M.H.S. to determine if there had been a change of circumstances. M.H.S., as expressed

through the testimony of Mother and corroborated by the testimony of the GAL, expressed her desire to live with Mother. A trial court does not abuse its discretion in giving more weight to the child's wishes than it gave to her adjustment to her home, school, and community where the child had sufficient reasoning ability to express her wishes and concerns, and that there were no special concerns that would lead the Court to conclude that it would not be in the child's best interest to determine her wishes and concerns. *Thompson v. Thompson*, 5th Dist. Stark No. 2018CA00074, 2019-Ohio-274, 2019 WL 354859, ¶ 39 citing *In re Beekman*, 4th Dist. Pike No. 03CA710, 2004-Ohio-1066, ¶ 19; *see also, Tomaszewski v. Tomaszewski*, 8th Dist. Cuyahoga No. 86976, 2006-Ohio-3357.

{¶44} Based on the record before us and cognizant of the limits of *Knapp*, *supra*, we find no abuse of discretion for the trial court reallocate the parental rights of M.H.S to Mother after appropriately considering the expressed wishes and concerns of M.H.S. in relation to the R.C. 3109.04(F)(1) best interest factors.

{¶45} Father's sole Assignment of Error is overruled.

## CONCLUSION

{¶46} The judgment of the Stark County Court of Common Pleas, Domestic Relations Division, is affirmed.

By: Delaney, J.,

Hoffman, P.J. and

Baldwin, J., concur.